## CHASTAIN v. TEXAS CHRISTIAN MISSIONARY SOC.

### No. 3120.

Court of Civil Appeals of Texas. El Paso. Jan. 17, 1935.

Rehearing Denied Feb. 7, 1935.

Walter B. Branan, of Dallas, for appellant.

E. Taylor Armstrong and Robert G. Storey, both of Dallas, for appellee.

HIGGINS, Justice.

In due time the Texas Christian Missionary Society, a corporation incorporated under the laws of Texas, presented for allowance to P. L. Chastain, administrator of the estate of Silas R. Dale, deceased, a claim against said estate evidenced by note of the deceased which reads:

"Permanent Fund Estate Note
"$5,000.00                    Fort Worth, Tex.,
                                "March 29, 1928.

"For value received, on or before Twenty-five years after date, I promise to pay to the Texas Christian Missionary Society, or order at Fort Worth, Texas, the sum of Five Thousand and 0⁰⁄₁₀₀ Dollars, ($5,000.00), with interest at the rate of One per cent per annum until paid, the interest payable Annually as it accrues.

"The principal of this note is to become a part of the Permanent Fund of the above named organization, but the interest may be used in the regular work of Texas Missions.

"This note shall become due and payable within Two years after my death in the event such occurs prior to the date for maturity as indicated above.

                               "[Signed]   S. R. Dale
"[Signed]   J. B. Holmes, Witness"

Two days later the claim was rejected in writing by the administrator. On the eighty-ninth day after such rejection this suit upon the note was filed by the society. The defendant answered. Some months after the institution of the suit, the society filed an amended petition upon which the case was tried. In response to a peremptory charge, verdict was returned and judgment rendered in favor of the society for the amount of the note with interest from March 29, 1932, to which date interest had been paid by the deceased. The judgment was ordered certified to the county court to be paid in due course of administration. The pleadings of the defendant need not be stated. They present all questions raised.

Appellant's brief contains numerous assignments of error, but the main insistence going to the merits of the suit may be stated:

1. The suit is barred by limitation under article 3522, R. S.

2. The note is invalid for want of consideration and certainty in date of payment and because it is testamentary in nature.

■ The suit was filed within ninety days after the rejection of the claim by the administrator. The plea of limitation is therefore without merit unless the amended petition set up a new cause of action. It is unnecessary to state the allegations of the first and amended petitions further than to say that both petitions declare upon the same note, setting up its terms, the death of Dale, the appointment and qualification of appellant as administrator, the presentation of the claim to the administrator, its rejection by him in writing on April 14, 1932, with prayer for judgment against the administrator. There can be no question that both petitions declared upon the same note.

The original petition sufficiently stated a cause of action good against general demurrer. The amendment corrected some formal amendable 'defects in the original petition. but this cannot be considered as stating a new cause of action. 28 Texas Jur., title Limitation of Actions, §§ 119, 120, and 122; Tolbert v. McBride (Tex. Sup.) 12 S. W. 752.

In this connection it is further contended there is a fatal variance between the claim presented to and rejected by the administrator, and the note sued upon. This is untenable.

J. B. Holmes, secretary of the society since 1917, testified:

"Q. The instrument you present here was a gift, wasn't it?  A. You refer to this—of Mr. Dale?

"Q. Yes.  A. In part, and in part not. He was purchasing that bond in which he was directly interested, carrying out his stewartship for life; guaranteeing the preaching which he desired to be done, and on continually as a memorial fund.

."Q. What do you mean by memorial?  A. We have three forms of memorial for which is given bonds; three authorized amounts for which is given a memorial bond; five thousand, ten thousand and twenty-five thousand dollars, which are the three forms in which we create memorial funds; of course, any amount ranging between the five and the twenty-five thousand dollars or more would be considered but we have those specifically designated memorial funds in which he was interested; and this bond in particular, though, that could have been a different bond had they desired to devote some of this money to some other character of preaching other than that in which Mr. Dale was primarily interested.

"Q. Well, you speak of a memorial, do you mean you erect a monument to his memory?  A. Not a marble monument, if that is the idea, but on the established records of the. church, and for this five thousand dollars, we

maintain as a separate fund, as a perpetual fund, in memory and in the name of S. R. Dale.

"Q. Well, do you mean by that that you keep it on your books in his name? A. Yes, sir.

"Q. Do you mean by that that you put the money in the bank— A. No, we loan the money. The society is responsible for it.

"Q. Well, do you keep any separate statements of that except on the books? A. No other place to keep it except on the books and records, if that is what you mean.

"Q. You spoke about this bond, No. 136, is it? A. Yes, sir.

"Q. How come the society to issue that bond? A. This particular one?

"Q. Yes, sir. A. At the request of Mr. Dale.

"Q. At his request? A. Yes, sir. Consideration for the note itself; in part.

"Q. In part. Did you give him a bond at the time he delivered you the note? A. No, sir. The note was delivered to me in person. I carried it back to our officials who passed, upon receiving it, a resolution of record in our minutes and ordered this bond executed to him, and they signed the bond as president and secretary, by the order of the governing board, and I mailed it then to him.

"Q. You mailed it to him? A. Yes.

"Q. When? A. Well, that is a thing that I would have to go entirely by memory without looking up the records. I have a letter there on file if you wish me to get it showing the exact date that we mailed it. * * *

"A. What we gave to Mr. Dale is incorporated in this bond which has five or six different valuable considerations, one of which is the right to exchange any payments on that bond in money from him to us or property from him to us, which is specified here that he could do for an annuity bond which would cause us to pay him interest during his lifetime and during the lifetime of his wife. All that—

"Q. All that is set out in that instrument? A. Yes, sir, it is all here."

The bond referred to by the witness reads:

"Permanent Fund Bond
"No. 130. $5,000.00
"Texas Christian Missionary Society
"A corporation Affiliated With the Co-operating Christian Churches of Texas.

"Whereas S. R. Dale of Dallas County of Dallas, State of Texas, has executed a Permanent Fund Estate Note in the sum of Five Thousand and no/100 Dollars ($5,000.00) in favor of the Texas Christian Missionary Society of Fort Worth, Texas, dated March 29th, A. D. 1928, and payable on or before Twenty-five years after date with interest from date at the rate of one per cent per annum, interest payable Annually as it accrues. Therefore said Society, in exchange therefor executes and delivers to the above named party, this Permanent Fund Bond in favor of S. R. Dale and his wife Mary E. Dale thereby binding itself to hold the proceeds of said note in perpetuity as a part of its regular Permanent Fund as a Memorial to the name of S. R. Dale and wife, but with the specific understanding that such Fund shall be subject to the following conditions and agreements, To-wit:

"Conditions and Agreements

"1. Payments may be made on said note at any time either in cash or by the delivery to said Society, by merchantable title, of property at its appraised value.

"2. When the total paid or credited on the said note, or paid to said Society under any other contract, condition or agreement, by the maker of said note equals the sum of Five Thousand Dollars, they shall be called Life Patrons: when the total paid or credited to said part— in the same manner equals the sum of Ten Thousand Dollars, h—— shall be called Fellow in Perpetuity; when the total paid or credited to said part— in the same manner equals the sum of Twenty-Five Thousand Dollars, h—— shall be called Benefactor. At the request of a Benefactor the Society agrees to maintain an Evangelist perpetually as a part of said Memorial.

"3. While the Society agrees that the income from the payments or credits on said note shall be used in harmony with the provisions of Section 4, yet upon written request, the following special privileges shall be extended to the said maker of said note, To-wit: (a) Either a part or all of the payments or credits on said note may be converted into a regular Annuity Bond of said Society, but with the agreement that at the death of the last Annuitant, such funds so converted shall be handled thereafter as tho the said Annuity Bond had never been executed. (b) To assist the maker of said note in completing the payments on the same, the Society agrees to credit any interest or other revenue that may accrue in its favor from handling the payments made on said Bond, either in cash or property, year by year, until the sum paid, plus the accrued interest or other revenue, less the

necessary expenses involved in handling the same, shall equal the face value of said notes, provided, however, that this privilege (b) shall not be available until at least one-half of the face value of said note shall have been paid.

"4. The Texas Christian Missionary Society further agrees that any and all the net income accruing from said Memorial Fund shall be devoted to the work of Evangelism but in harmony with what is commonly known as the 'plea of the disciples of Christ,' wherein the cardinal teachings and beliefs may be set forth as follows, to-wit:

"(a) The acceptance of and belief in the Bible as the Inspired Word of God, given to mankind thru the agency of the Holy Spirit, in harmony with the declaration of the Apostle Peter. See 2 Peter 1:21.

"(b) Unquestioned faith in God, the Father and Creator; in Jesus Christ, His Only Begotten Son, our Savior and Redeemer; in the Holy Spirit, Author of the Word, our Comforter and Helper.

"(c) The faithful teaching of the Bible as a whole, but with special emphasis on the New Testament conditions of pardon, and on the three Ordinances—Christian Baptism, The Lord's Supper and Tithing.

"(d) An earnest plea for the Unity of All God's Children in harmony with the prayer of our Lord as found in John 17:20, 21, on the New Testament basis as indicated in Ephesians 4:4–6, to the end that the world may be saved.

"5. It is further agreed that so long as the said Society shall be faithful in observing all those conditions and agreements, this Memorial Fund shall be left to its care and administration; but should said Society ever become unfaithful to this sacred trust in the judgment of any Court of competent jurisdiction, then, and upon the order of such Court, said Society shall deliver said Fund to the Texas Christian Missionary Convention (a Corporation formed by, and under the direction of co-operating Christian Churches, with headquarters at Dallas, Texas), or to its successor as the recognized general assembly of Christian Churches in Texas, to the end that said Convention shall create or form another similar State Missionary Society which shall operate within the state of Texas, in harmony with the identical conditions and agreements indicated herein, and this Fund shall be so withdrawn and so committed in the same manner just so often as any Society or other organization to which it may be committed, shall be proven unfaithful to the said sacred

trust, that the desires and purposes of the maker of said note may be fully and perpetually carried out as expressed and agreed herein.

"6. It is expressly understood and agreed that the value of this Bond shall always be determined and limited by the total value of the official receipts attached hereto, and that the responsibility of said Society shall under no condition ever exceed the total sum indicated by such receipts.

"[Seal—Texas Christian Missionary
Society. Fort Worth]

"In acceptance of this said trust, the Texas Christian Missionary Society has caused this Bond to be signed by its President and Secretary, and has caused its official seal to be affixed hereunto on this 29th day of March, A. D. 1928.

"Leo Johnston, President.
"Colby D. Hall, Secretary.
"J. B. Holmes, Witness."

The foregoing bond was found by the administrator among the effects of the deceased.

■ A number of letters written by the deceased show he recognized the validity of the note sued upon; but this is unimportant, for if in fact the note was without consideration the suit must fail under the well-settled general rule that a promissory note, executed and delivered without consideration, and intended as a gift inter vivos by the maker to the donee, is unenforceable against the maker or his estate after his death.

The evidence shows the deceased was interested in the work the society was doing for the advancement of the Christian religion.

■ In determining whether a promissory note is supported by a valuable consideration, the courts do not concern themselves with the relative value of the property for which the note was given. If, in law, the consideration for which a note was given is deemed valuable, then such note is valid. 10 Tex. Jur., title Contracts, § 89.

■■ Mutual promises concurrent in time constitute a valuable consideration, and the promises in the bond imposed obligations upon the society which, in our opinion, constitute a valuable consideration for the note sued upon. 3 R. C. L. p. 834, § 7; Page on Contracts, §§ 560 and 563; Garrigus v. Home, etc., 3 Ind. App. 91, 28 N. E., 1009, 50 Am. St. Rep. 262; Cotner College v. Hyland, 133 Kan. 322, 299 P. 607.

■ The contention that the note is unenforceable as being testamentary in character

is also regarded as without merit. Note 2 A. L. R. 1471–1473; 3 R. C. L. 834; Garrigus v. Home, etc., supra; Wolfe v. Wilsey, 2 Ind. App. 549, 28 N. E. 1004; Miller v. Western College, 177 Ill. 280, 52 N. E. 432, 42 L. R. A. 797, 69 Am. St. Rep. 242; Roche v. Seminary, 56 Ind. 198.

The note is payable 25 years after its date with an alternative provision automatically accelerating or postponing maturity to two years after the maker's death, depending upon whether Dale died before or after the 25-year period. We need not inquire whether this alternative provision affects the negotiable quality of the instrument under the Negotiable Instruments Act (Vernon's Ann. Civ. St. art. 5932 et seq.).

The future death of Dale was certain though the date of its occurrence was uncertain. If he lived 25 years after the date of the note, his promise to pay was then performable. If he died within the 25-year period, then his promise was performable by his legal representative out of the estate at the expiration of two years after Dale's death with the optional right of the representative to pay at any time within such two year period. 13 C. J., title Contracts, § 583, at page 584.

■ The promise to pay was certain to become performable upon one of two alternative dates contingent upon the length of time Dale might live. The contingent alternative maturity dates did not render the promise invalid because of uncertainty.

The terms of the note involved in the case cited by appellant (Zimmerman v. Zimmerman, 262 Pa. 540, 106 A. 198) are very different from the present note. The ruling in that case has no present application.

■ Error is assigned to the admission of the testimony of the witness Holmes, secretary of the plaintiff, to various conversations with the deceased relating to the note. It is objected Holmes was incompetent to so testify under article 3716, R. S.

The article has no application to an officer or other agent of a corporate party to a suit. Williams v. Farmers, etc. (Tex. Civ. App.) 201 S. W. 1083; C. & U. S. Mortgage Co. v. Thedford, 21 Tex. Civ. App. 254, 51 S. W. 263; Valdez v. Yoe (Tex. Civ. App.) 39 S.W.(2d) 122.

There are a number of other propositions submitted by appellant which have been given full consideration. They are regarded as without merit and calling for no discussion.

Affirmed.