## BENAVIDES v. LAREDO NAT. BANK.
### No. 1515.

Court of Civil Appeals of Texas. Eastland.
Feb. 7, 1936.

Melvion R. Luter, of San Antonio, for appellant.

Gibson & Blackshear and Mitchel Schwartzman, all of Laredo, for appellee.

FUNDERBURK, Justice.

Santos Benavides, Jr., brought this suit against Laredo National Bank to recover the amount of a deposit in the bank's savings department, amounting to $589.25, with interest. The deposit was made by S. M. Benavides, father of plaintiff, at different times from the 8th day of February, 1909, to January 30, 1912. When the account was opened, plaintiff was less than a month old. Upon opening the account, the bank issued a passbook to the father, and the latter signed a signature card showing his own signature to be that upon which checks against the account were to be honored. On September 11, 1912, Santos M. Benavides, the father, by his check, without surrendering the passbook but retaining it in his possession, withdrew the deposit. The passbook was never delivered to plaintiff but was found among the papers of Santos M. Benavides long after his death and the subsequent death of plaintiff's mother and only a short while before the institution of the suit. Plaintiff had no notice or knowledge of the existence of the deposit, or of the passbook, until it was so discovered in 1932 or 1933. Demand upon the bank by plaintiff for payment of the deposit was made in January, 1933.

Upon a nonjury trial the court gave judgment for the defendant, from which the plaintiff has prosecuted this appeal.

At the request of plaintiff, the trial judge filed conclusions of fact and law. The conclusions of fact embraced substantially the facts detailed above. The judge's conclusion of law was: "That the mere deposit by Santos M. Benavides, the father, of money in the savings department of defendant in an account opened by him in the name of his infant son, without more, did not effect a valid gift inter vivos and that plaintiff at no time had or acquired any interest in the fund on deposit."

Plaintiff (appellant) contends that Laredo National Bank, the defendant (appellee), was without legal authority to pay the amount of the deposit which had been made in its savings department, without the delivery of the passbook and without permission of the minor in whose name the deposit was made or without probate proceedings in behalf of such minor; that the rights of plaintiff were governed by statutes of Texas regulating savings banks; and that the deposit, under the facts stated, constituted a valid gift, inter vivos, between the father and minor son.

■ Revised Statutes 1911, art. 399, enacted in 1905 (Vernon's Ann.Civ.St. art. 409 note), having reference to savings banks and to banks accepting the provisions of the law authorizing "savings banks," provided that when a deposit was made in a savings bank by, or in the name of, one who is a minor, that the same should be held for the exclusive right and benefit of such depositor "and free from the control or lien of all persons whatsoever, except creditors, and shall be paid, together with the interest thereon, upon production of, and proper entry in, the pass book at the time of such payment, and in accordance with the by-laws of the corporation to the person in whose name the deposit shall have been made, and the receipt or acquittance of such minor * * * shall be a valid and sufficient release and discharge for such deposit, or any part thereof, to the corporation." The passbook which was issued to plaintiff's father stated certain rules and regulations, among them being: "Paragraph 3. Deposits made in our savings department are not subject to check. A depositor must always present his pass book on depositing or withdrawing money, so that the amount can be entered therein. If a person other than the owner desires to withdraw money, he must present a written order from owner along with pass book, and order must be properly witnessed. The possession of pass book will be regarded as test of ownership, and the bank will not be liable for false order if it is accompanied by pass book."

We find it unnecessary to determine the effect of the foregoing statutory provision. It only applied to savings banks as provided for in said R.S.1911, title 14, c. 3 (art. 386 et seq.), and such banks as should accept its provisions under authority of chapter 4 of said title (art. 431 et seq.). When the law was enacted, section 76 (Vernon's Ann.Civ.St. art. 491 note) excepted from its provisions "corporations chartered by the United States." Said chapter 4, art. 431 (Vernon's Ann.Civ.St. art. 430 note), does not name national banks among those authorized to accept the provisions of the act. We have been referred to no evidence to show that the defendant bank was subject to the law. The fact that it had a savings department does not afford sufficient support, we think, for a presumption of such acceptance.

■ The provision for presenting the passbook on depositing or withdrawing money was one, we think, which the bank could waive, at least in the absence of any statute giving it a contrary effect, being evidently a provision for its benefit. Even that made "the possession of the pass book the test of ownership." The father had possession of the passbook when he drew out the money. The finding that it was not surrendered was not a finding that he did not have possession of it. It was found in his papers after his death.

■ There are authorities which treat deposits in savings banks to the credit of a third party as being governed by the law relating to gifts. That, of course, contemplates that the money deposited, or else the contract under which the deposit is made, is delivered by the one depositing to the one in whose name the deposit is made. Applicable rules of law concerning gifts are that: "In order to be effectual, a gift must be fully executed, for the reason that, there being no consideration therefor, no action will lie to enforce it. If anything remains to be done, the transaction is a mere executory agreement to give, and the title does not pass. Until the gift is thus made perfect, a locus poenitentiae remains, and the owner may make any other disposition of the property that he may think proper." 28 C.J. 629, § 20. The same authority states: "A mere intention to make a gift, however clearly expressed, which has not been carried into effect amounts to nothing, and confers no rights in the subject matter of the proposed gift upon the intended donee. The intention must be executed by a complete and unconditional delivery." Id. "Where some essential element necessary to make a perfected gift, inter vivos, such as delivery to or acceptance by, the donee, is lacking, the donor may revoke the gift at any time before it is perfected * * *. Until a donor has divested himself absolutely and irrevocably of the title, dominion, and control of the subject of the gift, he has power to revoke it." 28 C.J. 650, 651, § 46.

■ The evidence in this case is wholly wanting in two essentials to show a perfected gift in the lifetime of the parties under the principles above declared. There was no evidence showing delivery, or the equivalent thereof, and there was no evidence showing an acceptance by the plaintiff. A note to Snidow v. Brotherton, 40 A.L.R. 1249, deals with delivery of a passbook to the donee as the equivalent of delivery sufficient to show a perfected gift. Many decisions hold that the delivery of a passbook with the intention of making a gift of the fund may be sufficient. The decisions are almost unanimous that in the absence of such delivery of the passbook no perfected gift is shown. The authorities collated in the note to Peters' Adm'r v. Peters (Ky.) 59 A.L.R. 969, largely preponderate in showing that "the attempt to uphold as a completed gift inter vivos a deposit of money in a bank in another's name without his knowledge until after the depositor's death or his attempted revocation of the same gift, has failed."

■ It occurs to us that the really applicable principle of law is that relating to contracts made for the benefit of a third person. So far as the evidence shows, the deposit in question was general as distinguished from special. Title to the money passed to the bank. The relationship created by such deposit was that of debtor and creditor. In other words, the obligation of the bank was a contract obligation. Since plaintiff, less than a month old, was certainly not a party to the contract, his rights therein, if any, are those of one for whose benefit the contract was made. Applicable principles are: "The person for whose benefit the contract is made must accept it." 10 Tex.Jur. 484, § 280, and authority cited. To be effectual, such acceptance had to be made during the lifetime of Santos Benavides, Sr., and before any rescission or withdrawal thereof, such as checking out the fund evidently was. Another applicable principle is that the beneficiary in such a contract "must accept the contract as it was made and must succeed or fail upon its provisions." 10 Tex. Jur. p. 485, § 281. When the deposit was made, the depositor, by means of the signature card, as explained by evidence of the general custom relating thereto, reserved the right to check out the money. Plaintiff's right to benefits of the contract were therefore burdened with this retained right of his father. The father exercised that right and withdrew the fund. The bank therefore could not afterwards be held liable upon the contract.

We are of the opinion that the trial court did not err as contended, that the judgment should be affirmed, and it is accordingly so ordered.