## PRUETT et al. v. FIRST NAT. BANK OF TEMPLE.

### No. 9405.

Court of Civil Appeals of Texas. Austin.

Nov. 3, 1943.

Robert J. Allen, of Lubbock, for appellants.

Saulsbury, Skelton & Everton, of Temple, for appellee.

BLAIR, Justice.

Appellants, Alvin H. Pruett and his three brothers, sued appellee First National Bank of Temple for $9,004.03 with interest. They alleged that in July, 1938, their brother, T. H. Pruett, a single man, and their mother, Mrs. Nancy J. Dyess, deposited said amount in the savings department of appellee bank to their joint account; that the brother died intestate in 1938, without having withdrawn any part of the account; that the mother died intestate in December, 1941, without having withdrawn the account; and that no administration was had or necessary on the estate of either deceased. Appellants further alleged that they and appellee Mrs. Lola Berry, their sister who refused to join them in the suit, were the sole survivors and heirs of their deceased brother and mother; and that she was a necessary party because she owned an undivided one-fifth interest in the savings account.

Appellee Mrs. Lola Berry was dismissed from the suit upon her motion disclaiming any interest in the savings account as against appellee bank. The trial to the court without a jury resulted in judgment for appellee bank against appellants.

The $9,004.03 was deposited in the savings department of appellee bank by Mrs. Nancy J. Dyess on August 18, 1938, upon her representation that the money deposited belonged to her, and upon the agreement that she might withdraw all or any part of the amount at any time; that her son, T. H. Pruett, who was suffering of leprosy, might draw checks against the account, if he needed to do so; and that in the event of the death of either herself or her son, the account would be subject to the check of the survivor. To carry out these agreed conditions, a duplicate deposit slip was made to the credit of "T. H. Pruett or Mrs. Nancy J. Dyess, or either of them," and the account was similarly carried on the ledger of appellee bank. A pass book, lost after it was later surrendered to the bank when the deposit was withdrawn, was at the time issued and delivered to Mrs. Dyess, showing the deposit or account. At the time of the deposit Mrs. Dyess was required to sign a signature card upon which signature withdrawals were to be made, and on which card was written the words, "Joint a/c— Mrs. Nancy J. Dyess and Thomas H. Pruett, for use of the First National Bank of Temple, Texas." Also, at the time the deposit was made, Mrs. Dyess directed that a signature card be mailed to her son, T. H. Pruett, who was in a hospital in Louisiana, which card he signed and returned to appellee bank, and on which was written the words, "this is a joint savings account of Mrs. Nancy J. Dyess, Bartlett, Texas."

T. H. Pruett died intestate on September 28, 1938, without having drawn a check against the account and without having exercised any control over it. Appellee bank had no notice of his death until the deposit had been withdrawn by Mrs. Dyess on December 20, 1941, and until after her death on December 28, 1941.

The pass book delivered to Mrs. Dyess was retained by her and she alone exercised control over the account, signing four withdrawal receipts or checks for the interest from time to time as it accrued. On December 20, 1941, Mrs. Nancy J. Dyess signed and delivered to Mrs. Ammie Shannon (also known as Mrs. Al Shan-

non) an instrument which read as follows:

"Temple, Texas
"12–20–1941.

"First National Bank of Temple:
"Pay to the order of Mrs. Ammie Shannon $9,094.07 and give Mrs. Shannon all my money with interest."

This instrument was signed by Mrs. Nancy J. Dyess. On the same date she signed and delivered to Mrs. Shannon a check, which was a counter check of the First National Bank of Bartlett, Texas. The words "Bartlett, Texas," on the top of the check were stricken out with ink and the words "Temple, Texas," were written below the scratched out words "Bartlett, Texas." The check was dated "Dec. 20–1941." The printed words "The First National Bank of * * *," were left and the word "Bartlett" following the word "of" was stricken out with ink. This check was payable to "bearer" and was signed by Mrs. Nancy J. Dyess. Mrs. Ammie (or Al) Shannon appeared at appellee bank on December 20, 1941, with the two aforementioned instruments or checks signed by Mrs. Nancy J. Dyess, and she also had in her possession the original pass book issued to Mrs. Dyess, all of which she took to a Mr. Buckley, the officer of appellee who handled the original deposit and with whom Mrs. Dyess made her contract. After a conversation with Mrs. Shannon, he took the check drawn on the changed Bartlett bank counter check and placed it in a typewriter and in the blank space after the words "pay to," he wrote "Mrs. Al Shannon." In the blank space for the amount of the check, he typed the figures $9,094.07, and on the next blank line of the check he typed the words "Nine Thousand Ninety-four and 07/100," just preceding the printed word "Dollars." He then marked on the bottom of the check the words "Savings Withdrawal." After Mrs. Shannon indorsed the check Buckley then paid her the amount stated upon the authority of the check, the written order, and the surrender of the pass book. For some reason there was left as interest in the account $90.94, which, together with interest thereon, aggregating $93.34 was by appellee bank deposited in the registry of the court, with prayer that it be paid to whomsoever it belonged.

Mrs. Shannon was not made a party to the suit, and after the dismissal of Mrs. Berry from the suit, without objection on the part of appellants, the sole question presented was whether the appellee bank had properly paid the $9,094.07 to Mrs. Nancy J. Dyess upon her written order and check. Appellants contend that there was a definite written contract between appellee bank and T. H. Pruett and Mrs. Nancy J. Dyess, evidenced by their signature cards and the pass book containing the rules and regulations with respect to the savings account, to the effect that the account was a joint deposit which could not be legally paid out unless duly authorized by both depositors. This contention is contrary to the terms of the deposit slip, which showed that the deposit was made to the credit of "T. H. Pruett or Mrs. Nancy J. Dyess, or either of them"; and is also contrary to the undisputed testimony of Buckley, the officer of appellee bank who made the depository agreement with Mrs. Dyess, and of Mrs. Shannon, who was present at the time, to the effect that Mrs. Dyess might withdraw all or any part of the account at any time; that her son, T. H. Pruett, might check against the account; and that in the event of death of either the account would be subject to the check of the survivor. Under these facts appellee bank's release and discharge from further liability on the deposit or savings account is fixed by Art. 541d, Vernon's Ann.Civ.St., which reads: "When a deposit shall be made in any bank organized and operating under the laws of this State or in any national bank or other banking institution doing business in this State by any person in the name of such depositor or in the name of such depositor and another person and with notice to the bank that such deposit shall be paid to either or the survivor of them, such deposit and any additions thereto made by either of such persons after the making thereof, shall be held for the exclusive use of such persons and may be paid to either during the lifetime of both or to the survivor after the death of one of them, and such payment shall be a valid and sufficient release and discharge to such bank or banking institution for all payments made on account of such deposit prior to the receipt by such bank or banking institution of notice in writing not to pay such deposit in accordance with the terms thereof."

Appellee bank had no notice in writing or otherwise of the claim of appellants prior to the payment of the account upon Mrs. Dyess' order and check. The deposit

slip, standing alone, showed notice to the bank that such deposit was to be paid to either depositor, and the undisputed evidence showed that it was to be paid to the survivor, in the event of the death of either depositor.

■ The testimony of the bank's officers and Mrs. Shannon relating to the representation of Mrs. Dyess that the money deposited in the savings account belonged to her, and that it was being deposited so that she might withdraw all or any part of it at any time, that her son might check on the account, and that the survivor might withdraw the account, was not objectionable as varying the terms of the written deposit contract as being evidenced alone by the signature cards and the pass book. This oral testimony was a part of the deposit contract, which was shown in part by the deposit slip, the signature cards, and the pass book. The rule is settled that where a contract is partly in writing and partly oral, the oral part may be proved by parol evidence. The deposit slip showed the deposit to the credit of "T. H. Pruett, or Mrs. Nancy J. Dyess, or either of them." This deposit slip together with the agreements or statements of the parties thereto were admissible to prove the terms of the contract partly in writing and partly oral. 10 Tex.Jur. 530, § 307.

■ Nor was any of the aforementioned testimony of the several witnesses objectionable under Art. 3716, which inhibits testimony as to transactions with a deceased in an action by heirs arising out of any transaction with a deceased, unless called for by the heirs or waived by them. In the first place, this suit is one by the heirs of the deceased Mrs. Dyess against appellee bank, a corporation, and the inhibition of the statute does not extend to the officers or agents of such corporation, and they may testify to the statements or transactions of the deceased with the defendant corporation, and out of which transactions the suit against the corporation arose. Colonial & United States Mortg. Co. v. Thedford, 21 Tex.Civ.App. 254, 51 S.W. 263; Chastain v. Texas Christian Missionary Soc., Tex.Civ.App., 78 S.W.2d 728, writ refused; and International Order of Twelve Knights and Daughters of Tabor v. Fridia, Tex.Civ. App., 91 S.W.2d 404.

■ In the second place, the oral deposition of each witness Buckley and witness Shannon was taken prior to the trial pursuant to commissions obtained by appellants, and each of which was duly returned into court, and each of which related to the savings account or deposit contract. The taking of the deposition of a witness, although it is not offered in evidence, is tantamount to the calling of the witness by the party taking the deposition, and such party thereby waives the benefit of the statute inhibiting his adversary from giving or adducing testimony as to the transactions with or statements by the deceased. Allen v. Pollard, 109 Tex. 536, 538, 212 S.W. 468; Lehman v. Howard, Tex.Civ.App., 133 S.W.2d 800.

■■ The witnesses Draper and Buckley, officers of appellee bank, were called by appellants to testify on the trial as to the deposit or savings account, and by so calling them appellants waived the benefit of the statute in question. Appellants stated that they were calling these witnesses under Rule 182, Texas R.P.C.A., relating to the right of one party to call his adversary without being bound by his testimony. This rule, however, has no application to the statute which inhibits testimony of transactions with a decedent unless called for by the party for whose benefit the statute was enacted.

■ The facts detailed also establish the defense interposed by appellee bank to the claim of appellants that they inherited the interest of their brother in the savings account at the time of his death, to the effect that Mrs. Dyess represented when she made the deposit that the money belonged to her and made the deposit with agreement that she might withdraw it at any time, and that appellee bank had no notice of the death of the brother or of the claim of appellants at the time it paid out the savings account upon the order and check of Mrs. Dyess. The facts showed that the appellee bank in making the deposit relied upon this representation of ownership, and the statements and instructions given by Mrs. Dyess at the time the deposit was made in the handling and paying out of the savings deposit. In this situation the appellee bank had the right to rely upon the depositor's representations and instructions under the rule stated in Silsbee State Bank v. French Market Grocery Co., 103 Tex. 629, 132 S.W. 465, 466, 34 L.R.A.,N.S., 1207, wherein the court in considering a deposit to the credit of "Ray Miller, Agent," held: "It is be-

yond question that a bank receiving a deposit, made as this one was, becomes bound and therefore entitled to treat the depositor as owner of the fund and to honor and pay his checks properly drawn without concerning itself with any question as to the ultimate ownership or as to the application made or to be made of the money drawn out. * * * This is true regardless of the question whether the depositor is the owner in the fullest sense or had only the legal control, as agent, over money really belonging to others. * * * The depositor controls the fund whether he is the true owner or not. * * * That which is decisive in our judgment is that the depositor is found in the full possession and control of the money deposited."

See, also, Benavides v. Laredo Nat. Bank, Tex.Civ.App., 91 S.W.2d 372.

■ Appellee bank also interposed the defenses (1) that the money deposited was actually the money of Mrs. Dyess under a gift from her son, T. H. Pruett; that she merely gave him the right to check against the account with the conditional right to check out the account if she predeceased him; and that the bank paid out the deposit to her agent upon her order and check; and (2) that after that time she gave the money so checked out to her daughter, Mrs. Berry, and to her nurse and niece, Mrs. Ammie Shannon, in equal parts; and that thereafter appellants were paid $1,400 by Mrs. Berry and Mrs. Shannon, in settlement of their claim to an interest in the money. The trial court held that these subsequent transactions occurred and inured to the benefit of appellee bank; and that appellants were estopped thereby to claim that the bank had wrongfully paid out the money, of which they had been paid their interest. We sustain this action of the trial court, but since we are clear in the view that the first two defenses mentioned conclusively settle the question of the nonliability of the appellee bank to appellants, we pretermit any further discussion of the last mentioned defenses.

■ Nor do we sustain the contention of appellants that in making the deposit to the credit of "T. H. Pruett, or Mrs. Nancy J. Dyess, or either of them"; with the further instruction that if she predeceased T. H. Pruett, he would have the right to check out the account, Mrs. Dyess made a gift of the money or deposit to T. H. Pruett. The facts showed and the trial court found that there was no intention on the part of Mrs. Dyess to make a present gift of the money to T. H. Pruett. He was merely given the right to draw on the account, and in the event Mrs. Dyess predeceased him, the account was subject to his check. The deposit contract was that the bank might pay the money to either of the depositors during their lifetime, and to the survivor after the death of either. In consequence, the bank was not concerned with the ultimate ownership of the deposit, or as to the application to be made of it after it was withdrawn, but under the terms of the statute (Art. 541d) and the Silsbee Bank case, supra, could pay the money to either depositor during their lifetime and to the survivor after the death of one of them. No intention on the part of Mrs. Dyess to give the money to T. H. Pruett was shown, and there was no delivery to or acceptance of the gift by him shown. Benavides v. Laredo Nat. Bank, Tex.Civ.App., 91 S.W.2d 372; 48 A.L.R. 191; 66 A.L.R. 882; and 103 A.L.R. 1124.

■ The provisions of the pass book with respect to the payment of the money to the depositor in person, or to a person holding the written order duly witnessed; and with respect to thirty days' notice of intention to withdraw were each placed there for the benefit of the appellee bank, and each of which it could and did waive. Benavides v. Laredo Nat. Bank, supra.

■ Other points relating to the sufficiency or admissibility of the evidence have been duly considered and overruled. The foregoing findings of fact, recited in the judgment, were sufficient to sustain it. The recited facts were admissible under the rules hereinabove stated. If any of the testimony of Mrs. Berry relating to transactions with or statements by her deceased mother was not admissible under the inhibition of Art. 3716, then there is no showing that the trial judge trying the case without a jury considered it. In absence of such showing the admission of the evidence was harmless, and particularly so since the trial judge stated that he was admitting the testimony in view of the objection made to it and to save time, and no showing was made that he did consider it.

■ Appellants contend that the court erred in rendering judgment declaring that Mrs. Berry, after she was dismissed

from the suit, was entitled to one-fifth of the balance of the deposit which appellee bank deposited in the registry of the court. Appellants were awarded all their interest in the money and manifestly have no interest in the fact that the judgment merely declared that Mrs. Berry owned a specific interest in the fund so deposited in the registry of the court.

■■■ Nor did the trial court err in rendering judgment for appellee bank against appellants for all costs of suit. Appellants recovered nothing by their suit for wrongfully paying out of the deposit. They would have been compelled to institute some sort of proceeding to recover the small balance of the deposit. Appellee bank tendered it for adjudication in this suit, which was done, and in consequence the trial court had the right to adjudge who should pay all cost of the suit.

The judgment of the trial court is affirmed.

Affirmed.