Hemphill, O. J.
We will consider such of the points discussed in argument, as naturally arise on the pleadings and evidence, and as are decisive of the controversy.
The first question which presents itself is, whether the petitioner’s claim to Caroline as a gift from her mother has been supported by the proofs in the cause.
The evidence of the first witness was, that Mrs. Wadlington sometimes said she had given Caroline to Mrs. Wilson, and sometimes that she intended her for her daughter at her (Mrs. Wadlington’s) death. The testimony of the sons-in-law and one of the daughters of the deceased was, in substance, that the slave was intended by the mother for the daughter, but not actually given.
The testimony of the first witness to the use of the expressions by Mrs, Wadlington, that she had given the girl Caroline to Mrs. Wilson, is not corroborated by the others, who, from family associations, had the best opportunities of ascertaining the fact, whether they were the acts or the expressions of the parties in relation to the matter; but admitting that the expressions referred to had been used (and we have no reason to doubt nor do we intend to impeach the truth of that fact), yet the presumptions arising in favor of the gift, from these expressions, are effectually repelled by the other facts and circumstances in the case.
If we recur to the authorities, it will be found that delivery and possession are requisites essential to the validity of a parol gift of personal property, or should possession remain with the donor it must be by permission of the donee and for the use and benefit of the latter, at least with his consent.
The transmission of property must be complete and the donee must have a present right to its immediate enjoyment, and for its recovery, be able to maintain an action at law, as well against the donor as against all other persons.
In the case before us the gift is alleged to be a donatio causa mortis, but this is not sustained as there is no proof that the subject was even alluded to by the deceased in her last illness; but there is no distinction between the donatio inter vimos and the donatio causa mortis, as to the requisite of delivery. In either case it is essential *(119) to the validity of the gift. The transfer of dominion must be complete, in the latter case, defeasible on the recovery of the donor.
The alleged gift here is one inter vivos and to support the claim to the property must possess all the necessary incidents of that species of gift.
The doctrine in relation to this subject is well laid down in 2 Kent Com. p. 438. “ Gifts inter vivos have no reference to the future and
go into immediate and absolute effect. Delivery is essential both at law and in equity to the validity of a farol gift of a chattel, and it is the same whether it be a gift inter vivos or causa mortis. A mere intention or naked promise to give without some act to pass the property is not a gift. There exists the locus penitentice so long as the gift is incomplete and left imperfect in the mode of making it, and the court of equity will not interfere and give effect to a gift left inchoate and imperfect. The necessity of delivery has been maintained in every period of the English law, donatio perficitur possessions aa-cipientis was one of its ancient maxims.” “ Delivery must be according to the nature of the thing. It must be an actual delivery. It must be secundum subjectam materiam, and be the true and effectual way of obtaining the command and dominion of the subject. If the thing be not capable of actual delivery, there must be some act equivalent to it. The donor must part not only with the possession, but with the dominion of the property.”
The principles embraced in the foregoing extracts are supported by all the authorities which have been accessible to examination.
In the case under consideration, the subject of the gift was a slave, and the donee of age or at least a married woman. It is a case then where actual delivery was required as essential to consummate the gift and to invest it with its legal requisites. Can we suppose from any part of the testimony that an actual delivery of the property was made? If it be contended that proof by eye witnesses of tradition from hand to hand is not required, yet, delivery and change of property and dominion being essential, to what part of this testimony shall we look for proof of these requisites? Let it be admitted that in the absence of other proof an admission by the donor that he had given might in some cases be evidence of delivery, yet the presumptions arising from such an acknowledgment will be rebutted by the donor’s continuing in the possession and in the “ exercise ” of dominion over the property. The test of delivery — of the consummation of a parol gift of a chattel — is the change of property — the immediate right to entire dominion over the subject of the gift — a perfect title which is as good against the donor as any one else. Can it be *(120) pretended that there was any change of property in this case? That the mother had surrendered or intended in the slightest degree to surrender dominion over the slave Caroline? That the possession was with the donee, Mrs. Wilson? — or that the possession by the mother was by the permission of the daughter or ill defiance of her rights? None of these facts, but the reverse of them being established, all inferences of delivery from the admission by the mother that she had given are at once destroyed. Her most solemn declarations that she had given would not be evidence of a gift, where she did not for a single instant relinquish dominion of the property, and where it was not vested in the donee by delivery, actual or constructive. This is not a case where a donation is made by a parent to an infant child living with him, and it is not necessary to state what, under such circumstances, might be regarded as sufficient proof of delivery. The change of property must, in all cases, be complete at the instant of the gift. The right which had been in the donor must, eo instcmti of the gift, be vested in the donee. Wh^ should be the acts of the parent for the purpose of effectually securing to a child the gratuities flowing from parental affection, it will be sufficient to determine when the case properly arises.
In the passage which has been quoted from Mr. Kent, it is said that the necessity of delivery has been maintained in every period of the English law. As a rule of law, it is venerable then for its antiquity; and on the score of policy it should be firmly maintained. Under the circumstances of this case, suspicion is not aroused to the dormant mischiefs of which secret ■parol gifts are the fruitful source, and which can only be held in check by insisting on the necessity of delivery and possession of the property. Here the parties are of full age, and no doubt can be entertained of the intention of the mother, that the petitioner should be the recipient of her bounty; but if the necessity of delivery, change of possession or of property be dispensed with in one instance, it must in all. If the rule be relaxed, how easy would it be, out of the most unimportant circumstance from the slightest acknowledgment, to frame evidence of donations which could be buried or brought to light as occasion might require; and which might strip the heirs at law, and in natural affection, of all the property of a deceased relative; or which among children equally beloved might produce the most odious discrimina-tions in the distribution of the parent’s property. In moments of playfulness or anger, or of excited feeling, parents may make loose declarations of their having given property to this or that one of their children, and those ebullitions of sportiveness or temporary feeling *(121) may, after being concealed for years, be set np as a bond fide disposition of property; and if sustained, may operate the highest injustice and produce discord and animosities among those whom the ties of policy and nature combine to unite together. As a general rule, those yerbal gifts should be watched with jealousy by the courts. They are frequently supported on a very flimsy foundation; and being concocted in secret, they are difficult to be resisted and can only be effectually restrained by establishing the rule that there must be delivery and change of possession, or some notorious change of property, where the possession still remains with the donor.
We have heretofore considered the claim of the petitioners, on the acknowledgment of Mrs. Wadlington, that she had given. the property to her daughter, and have seen the effect of such acknowledgment counteracted by all the facts of the case. This, however, was but the evidence of one of the witnesses, and the question must be decided, not on his, but on the testimony of the others, which goes only to the extent that the mother intended the slave for her daughter, at her (the mother’s) death. This, at furthest, is but a naked promise to give, and as such, has never been supposed to be binding. Had she made a formal gift, to take place in possession after her death, it would have been invalid. A parol gift of a chattel is good only when it takes effect immediately. An estate to commence in futuro cannot be made in personal property by parol. The gift must go into immediate and absolute effect.
But in this case there is no gift with or without reservations. It is a mere promise to give, left inchoate and imperfect by the decedent,, and to which no effect can be given in courts of justice. Pitts v. Mangum, 2 Bailey, 588; McGinney v. Wallace’s Adm’r, 3 Hill, 254; Hall v. Howard, Rice, 311 ; 2 Ala. (N. S.) 52, 117, 699; 8 Porter, 449; 2 Johns. 52; 12 id. 188; 18 id. 145; 2 Hill Ch. 600; 1 Nott and McC. 593; Bailey Eq. 141; 12 Yes. 39.
In the charge of the judge the jury was instructed that if they believed Mrs. Wadlington had given the negro woman Caroline to Mrs. Wilson, and afterwards retained her in possession, they would find the property to be in Mrs. Wilson, subject to debts contracted by Mrs. Wadlington on the faith of the property.
The important error in this instruction is its vagueness, and leaving-it to the jury to find a mixed question of law and fact. The judge should have instructed them as to the facts necessary to be proved, in order to constitute a valid parol gift. That actual delivery of the thing — complete dominion over and perfect title to the property and a change of possession were necessary. Or, if possession remained *(122) with the donor, it must he by permission of the donee, or adverse to his right; or in case of an infant, because the donee lived with the parent, who was the donor. To make a parol gift effectual, the right of property must be completely divested out of the one and vested in the other. With such instructions, the jury should have been left to find whether a parol gift, containing these essential requisites, had been made. And the fact whether the after possession by the mother was in her own right, or by the permission of her daughter, was also for the jury to determine. It is not probable that the jury under such instructions would have found in favor of the petitioner’s claims to the negroes in controversy.
The case cited in the charge of the judge from 2 Yerger, 582, was materially different from the cause on trial. In the one cited, the gift was made by deed, in the other by parol.
All the doctrines established in the case from Yez’ger and the cases there cited may be admitted (and they are not denied) without affecting the case which was about being submitted to the jury.
Here the evidence does not even prove an attempt by parol to create an interest in property, which was to commence vn futuro/ or that there was an actual gift of an estate to commence at a future period, with a life interest reserved to the donor. The mother speaks only of her intention to give, and that she would give if the services of the negro were not necessary to her support, etc., while during the whole period she controls the slave as her own'J and is compelled to pledge her to procure the means of subsistence. She makes no gift by parol with limitations similar to those contained in the deed of gift referred to; and if she had, the act would have been ineffectual in law to vest any property in the petitioner. In the cases Pitts v. Mangum, 2 Bailey, 588, and McGinney v. Wallace, 8 Hill, 254, it is laid down, that every parol gift must take effect immediately, or at least the donor must part from the title at the time of delivery. If he reserve •to himself a dominion beyond the control of the donee, the title still remains in him, and the gift is not consummated. Where the donor, although he has delivered the negroes, reserves to himself the use of the property during the joint lives of himself and wife, the gift is invalid, because it is an attempt to create an estate in a chattel by parol, to commence in future, which cannot be allowed.
It is not necessary, however, to decide what conditions may be annexed to a gift by parol; because the evidence is satisfactory, that no gift was ever made; and that although the deliberate intention of the mother was, to bestow this property on her daughter, yet her beneficent intent was never in act or fact consummated.
*(123) The evidence adduced is altogether insufficient in law to support the finding of the jury in favor of the claim of the petitioner as a gift.
Nor was there any evidence before the jury to justify their finding for the services of the slave while in the possession of the defendant. Some of the jurors may have had personal knowledge of the facts which controlled the action of the jury, but the- proof was (and on that the jurors were bound to act), that all 'the while she was in the possession of the defendant her health was very delicate, and that particularly ever since the birth of the child, she had been sick and required1 medical attention.
Their verdict on this issue, being without or contrary to evidence, must be set aside.
But, although there was no gift, valid in law and transmissive of right, made of this property, yet there was the purpose and deliberate intention on the part of the mother that this transfer should be effected; and this founded on no capricious or momentary consideration, but for the commendable object of equalizing the bounties she was distributing, and endowing this daughter with a portion equal to those which the other children had severally received. Of the names and number of the heirs of the deceased we are ignorant, but it appears that advancements had been made to them all, in the life time of the mother; that Mrs. Wilson was not so well provided for as the others, and that if the estate were now distributed in the due course of law, she would beyond doubt be entitled to the slave in controversy; and that although the designs of maternal affection had failed, yet the purpose was effected by operation of law; and the property, as the mother had intended, now, of right, belongs to the petitioner.
To dismiss the petition under such circumstances, would operate a peculiar hai’dship on the petitioners. The property is theirs beyond reasonable question. Gentlemen learned in the law believed that their pretensions might be supported on the grounds of a donation. There was no adjudicated case in our own courts, in which the subject of donations or gifts had been discussed, or any points in relation to them decided. We incline, under the circumstances, to permit the petition to be amended, and the claim of the plaintiff, Sarah, as dis-tributee of her mother’s estate, to be alleged, calling in all the heirs as parties; and that the question of right be, in this suit, at once and finally determined. Had the petition alleged the title of the plaintiff, Sarah, to this property, as the distributee of her mother’s estate, making the proper parties and alleging the other facts and circ.um- *(124) stances, and offering as they have done, to pay all just claims against the estate of the deceased, they would, under the facts alleged, have been entitled to the judgment of the court in their favor.
It has not been necessary to refer to the rights of the defendant as a creditor, as against the gift alleged by petitioner. His rights as a creditor are expressly acknowledged. In the decision of this case, we do not intend that his claims as a creditor of Mrs. Wadlington in her lifetime, or of her estate, for claims that are just and tona fide, shall be disturbed; but while he is entitled to full protection in his legal rights, his conduct in some particulars is not such as to commend him to the especial favor and regard of a court of justice.
In the original loan of the money, he was entitled and doubtless received the gratitude of the deceased. She was in distress; the slave which she had pawned was about to be abducted or removed, when the money for her relief was advanced by the defendant. What was the intention of the parties — whether the money was to be promptly returned, or to be paid by the services of the negro at some fixed rate, we are not informed. Without any agreement, the profits of the thing pawned must be accounted for by the pledgee; and in the further proceedings in this cause, an account must be taken of the services or hire of the slave Caroline, which must first be applied to the payment of the principal and interest of the money loaned; and the balance if any be appropriated to the extinguishment of the tona fide debts of the estate.
The defendant has purchased the account of Dr. Lewis against the estate, amounting to $89.50, for fifty dollars; or for little more than half the nominal amount, and now charges the estate with the full sum. This was purchased before the administration was committed to him, but was sold by the creditor under the belief that the defendant was administrator, raising the presumption that the acts of the defendant were such as to induce the belief of his having administered; and having assumed this character, his acts should not operate to his private advantage, but for the benefit of the estate. There was no error in the court allowing him but the fifty dollars which he had expended for the payment of this claim. To this he is entitled and no more.
An objection was made in argument to the jurisdiction of the district court; and that the matters involved in this controversy were properly aud exclusively cognizable in their inception, in the court of probate.
It is true that in the acts to organize the district courts, etc. (last session), there is no special delegation of jurisdiction over executors *(125) and-administrators made to the district courts; but, although this has not been done by the legislature, vet by the 15th section of the 4th article of the constitution, the district courts are invested with original jurisdiction and control over executors, administrators guardians and minors, under such regulations as may be prescribed by law. The grant of jurisdiction is complete, subject to legislative regulations, and is certainly not impaired because these regulations have not been made. The subjeet is interesting, but it has not been sufficiently argued to make a decision settling all the points involved expedient.
The jurisdiction is to be asserted in proper cases, but to what extent and under what circumstances it will be enforced is left to future investigation and determination.
Wherefore, it is considered by the court, that there was error in the finding of the jury and the judgment of the court; that (on the evidence adduced, or such part thereof as was pertinent to the issue) the negroes in controversy were the property of the plaintiff; that there was error in the charge of the judge in not instructing the jury what facts were necessary to be proven in order to constitute a valid parol gift of personal property; and in leaving it to them to find a conclusion of law as well as the facts in relation to the alleged gift of the slaves by the deceased; that there was error also in the jury finding for the services of the slave without any proof of the said services or of their value.
It is therefore ordered, adjudged, and decreed, that the judgment of the court below be in all things reversed; and that the cause be remanded to the district court for a new trial; and for as much as it appears from the evidence adduced that the plaintiff, Sarah Wilson, as one of the heirs of the estate of the said Mary Wadlington, is entitled to the said slaves, to the exclusion of the other heirs and dis-tributees of the said succession, it is ordered that the plaintiff have leave to file an amended petition, alleging the claim of the said Sarah to the said slaves as heir aforesaid; that the other heirs of the said estate be made parties, and be required to renounce their claims to the said property; or should they not file disclaimers, that the right of the said plaintiffs be established adversely on such proof as is required by law. That an account be taken of. the value of the services of the slave Caroline and the amount be applied to the payment in part or the whole of the principal and interest of the one hundred dollars borrowed by the appellant of the defendant; and should a balance remain after payment of the said loan that the same be applied to the discharge of the Iona fide debts of the estate of *(126) the deceased, whether the same be acknowledged or established or to be established in due course of law; and that all just debts paid by the administrator shall be credited to him, not in their full amount, but in the sum which he has expended for their payment, whether the same were arranged by him before or after taking out letters of administration; that if any balance be due the administrator he shall have judgment for the same. On the payment of which the said slaves shall be delivered to the plaintiffs.
And it is further ordered, that the action of the district court in their further proceedings in this cause be in conformity with the directions and instructions prescribed in the opinion and judgment of this court.