**COGDILL et al. v. FIRST NAT. BANK OF QUITAQUE et al.**

No. 5706.

Court of Civil Appeals of Texas. Amarillo.
March 11, 1946.

Rehearing Denied April 15, 1946.

Borden M. Seaberry, of Weatherford, and Clyde Wright, of Silverton, for appellants.

Richard F. Stovall, of Floydada, for appellees.

BOYCE, Justice.

This case presents a contest over the ownership of a deposit of $4,229.69 in the First National Bank of Quitaque. The suit was brought by the appellants, R. C. Cogdill and Lee Huffstuttler, against the appellees, First National Bank of Quitaque and Nellie Borden. Edna Lackey, Illene Johnson, and Fern Winn, joined by their husbands, intervened. The appellants claimed ownership of the fund as donees of Joe Huffstuttler, deceased. The appellee Nellie Borden denied any gift by the deceased to the appellants and in a cross-action asserted ownership of the deposit as executrix of the will of Joe Huffstuttler. The intervenors alleged an interest in the subject matter of the suit as beneficiaries under the will of Joe Huffstuttler and adopted the pleadings of the appellee Nellie Borden. The First National Bank took the position of a stakeholder.

The case was tried by the court without a jury. Judgment was rendered denying appellants any relief, decreeing that the estate of Joe Huffstuttler was the owner of the fund and directing the First National Bank of Quitaque to pay over the money to the executrix of his will.

The trial court filed informal findings of fact and conclusions of law to the effect that a completed transfer of the fund to the appellants occurred prior to the death of Joe Huffstuttler, but that the transfer was made by Huffstuttler for his own benefit and not as a gift.

By their points of error the appellants contend that the completion of the transfer of the fund to them prior to Joe Huffstuttler's death in itself constituted a gift.

At the time of his death on June 25, 1945 Joe Huffstuttler was a childless widower about sixty-nine years of age. He was unable to read and write. For about forty years previously he had lived in Roosevelt County, New Mexico, which was also the residence of the appellee, Nellie Borden. Early in June 1945 he came to Quitaque to visit his sister, the wife of appellent R. C. Cogdill. While on that visit he contracted a fatal illness; it was during such illness that the transactions resulting in this lawsuit occurred.

At the time the deceased came to visit his sister he had approximately $5,000 on deposit in the First National Bank of Portales, New Mexico. The appellee Nel-

lie Borden, a niece of the deceased, was authorized to draw checks on that account. The appellants' witness, Dr. J. E. Garner, who attended the deceased in his last illness, testified that his patient seemed to worry a great deal for fear that "somebody back in Mexico" would get his money; that witness wanted to ease the mind of the deceased and suggested that the money be transferred to R. C. Cogdill and Lee Huffstuttler, brother-in-law and brother, respectively, of the deceased; that pursuant to this suggestion the deceased, in the presence of the witness, executed and delivered to appellants a draft payable to their order for the balance of deceased's account in the Portales bank; that following the delivery of the draft the deceased appeared to rest much easier. Witnesses for the appellees testified that the appellant Cogdill, in whose home the deceased was staying, had spoken of his (Cogdill's) financial inability to take care of the deceased and that it might be necessary to place him in an institution; that after these statements were made, the deceased turned over to Cogdill about $600 to be used to pay deceased's expenses; that this money was turned over to Cogdill several days prior to the time the draft to Cogdill and Lee Huffstuttler was executed.

The draft for the balance in the Portales bank was deposited for collection with the First National Bank of Quitaque. It sent the draft to the Portales bank. Prior to Joe Huffstuttler's death the Portales bank accepted the draft and issued and mailed to the Quitaque bank its own draft on the First National Bank of Fort Worth in payment. That draft was received by the Quitaque bank on Sunday afternoon prior to Joe Huffstuttler's death late Sunday night and was credited to the account of appellants on Monday morning. On the same morning the Quitaque bank honored a check for $735 drawn by appellants on the account in payment of Joe Huffstuttler's funeral expenses.

Later in the day the president of the Portales bank informed the president of the Quitaque bank by telephone that the Portales bank would stop payment of its draft on the First National Bank of Fort Worth unless the proceeds of the draft were credited to the Joe Huffstuttler estate. When this conversation was related to the appellant Cogdill by the president of the Quitaque bank, Cogdill, without protest, gave the Quitaque bank a check for the balance in the appellants' account; the proceeds of this check were deposited to the credit of the Joe Huffstuttler estate.

There is no testimony that the appellant Lee Huffstuttler was requested to sign this check, nor is there any testimony relative to his attitude toward the transaction. Neither he nor the appellant Cogdill was a witness on the trial.

■ In order to establish a gift inter vivos, it is necessary to prove both the delivery of the subject matter of the gift by the donor to the donee and the intention on the part of the donor to vest in the donee unconditionally and immediately the ownership of the property delivered. Garrett v. Hunt, Tex.Com.App., 283 S.W. 489; Harmon v. Schmitz, Tex.Com.App., 39 S. W.2d 587; O'Donnell v. Halladay, Tex. Civ.App., 152 S.W.2d 847, writ of error refused for want of merit.

■ The transfer was completed when the Portales bank, prior to Joe Huffstuttler's death, accepted the draft drawn by him payable to the order of appellants and issued and delivered its own draft on the First National Bank of Fort Worth in payment. Section 189, Article 5947, Vernon's Annotated Civil Statutes.

In view of the authorities above cited, the completion of the transfer was not, under the circumstances in this case, sufficient to show an intention on the part of the deceased to immediately and unconditionally vest in appellants the ownership of the fund. There is no testimony that the deceased ever expressed to any one his intention to give his money to the appellants. Witnesses to his mark at the time the draft was signed testified that he made no statement whatever. To us the only logical inference to be drawn from the testimony of Dr. Garner is that the draft was drawn in order to keep "somebody back in Mexico" from getting the money. The purpose of the transfer was to assure the preservation of the fund for the benefit of the deceased and to prevent its being diverted to some other use. His placing the money in the hands of his brother and brother-in-law, who were near and to whom he could directly communicate his wishes and instructions, was conduct consistent with such purpose. The whole testimony relative to the situation of the deceased at the time he signed the draft fails en-

tirely to suggest that the deceased had any intention of divesting himself of all dominion over the fund.

The conduct of the appellants immediately following Joe Huffstuttler's death is also consistent with the theory that they were to devote the proceeds of the draft to the use and benefit of the deceased. They paid his funeral expenses out of such proceeds, and the appellant Cogdill, without protest, gave a check on the account transferring the balance to the Huffstuttler estate. The failure of the appellants to explain the reasons for their payment of the funeral expenses and their lack of protest of the transfer of the balance of the account to the Huffstuttler estate supports the inference that they recognized that they held the deposit as trustees for Joe Huffstuttler.

We are therefore of the opinion that the trial court's findings are amply supported by the evidence.

The judgment is affirmed.