**A. C. COOPER et al., Appellants,**

**v.**

**Minnie DURHAM et al., Appellees.**

**No. 5093.**

Court of Civil Appeals of Texas, Eastland.

March 30, 1978.

Rehearing Denied May 4, 1978.

Tom Joseph, San Antonio, and Leon F. Steinle, Jordanton, for appellants.

W. Michael Murray, San Antonio, and Gary W. Shank, Floresville, for appellees.

WALTER, Justice.

Minnie Durham and Maidie Lanell Durham, also known as Nell Durham, recovered a judgment, based on answers to special issues, to funds represented by Certificate of Deposit No. 291 issued by The First National Bank of Poth, Texas, and to the funds represented by the checking account on deposit at said Bank in the name of "Maida Cooper or Minnie or Nell Durham". Nell Durham recovered title to a Cable "player" piano.

A. C. Cooper and Riley G. Cooper and A. C. Cooper, administrator of the estate of Maidie Cooper have appealed.

We find appellants' statement of the nature of the case to be accurate and it is as follows:

"Maidie Cooper was a feme sole at the time of her death September 17, 1975, intestate. She left surviving her, her sister Minnie Durham, one of the Plaintiffs here, and A. C. Cooper, also known as A. C. Cooper, Jr., and Riley G. Cooper, her brothers, the Defendants-Appellants here. Minnie Durham qualified as the Administratrix prior to the filing of this suit, whereupon Riley G. Cooper and A. C. Cooper filed a separate action in the Probate Court of Wilson County, which Plaintiffs sought unsuccessfully to enjoin through the lower Court, removing her as Administratrix and qualifying A. C. Cooper, Jr. as Administrator, who then filed an answer in behalf of the Estate, and is now one of the Appellants. The nature of the controversy is centered on the ownership of funds in the First National Bank located in Poth, Texas. There was on deposit, as of the 4th of September, 1975, the sum of $14,793.97 in a checking account, and $16,200.41 plus accrued interest in the form of a Certificate of Deposit. The bank, however, made no claim to such funds and is not here appealing."

The issues and the jury's answers are as follows:

"SPECIAL ISSUE NO. 1

On or about September 4th, 1975, did the deceased, Maida Cooper, make a gift in contemplation of death to Minnie Durham and Nell Durham of the following property items?

Answer separately with respect to each:

a. The funds represented by the Certificate of Deposit No. 291 at the First National Bank of Poth.

ANSWER:   Yes

b. The funds on deposit in the checking account at the First National Bank of Poth.

ANSWER: Yes

SPECIAL ISSUE NO. 2

Did Maida Cooper on or about September 8th, 1975, make a gift during her lifetime of the funds represented by the Certificate of Deposit No. 291 with First National Bank of Poth, Texas, to Minnie Durham and Nell Durham?

ANSWER: No

SPECIAL ISSUE NO. 3

Did Maida Cooper on or about September the 8th, 1975, make a gift during her lifetime of the player piano to Plaintiff Nell Durham?

ANSWER: Yes

SPECIAL ISSUE NO. 4

Did Maida Cooper on or about September the 4th, 1975, and the First National Bank of Poth, acting through Mildred Moore, mutually agree that the survivor or survivors of Maida Cooper or Minnie Durham or Nell Durham would receive any of the following items of property?

Answer separately as to each:

a. Proceeds of the checking account at the First National Bank of Poth.

ANSWER: Yes

b. The funds represented by Certificate of Deposit No. 291 at the First National Bank of Poth.

ANSWER: Yes

SPECIAL ISSUE NO. 5

Did Maida Cooper enter into an agreement with the First National Bank of Poth, acting through Mildred Moore, that Certificate of Deposit No. 291 would be issued so that the survivor or survivors of Maida Cooper or Minnie Durham or Nell Durham would be entitled to the funds represented by Certificate of Deposit No. 291.

ANSWER: Yes

If you have answered Special Issue No. 5 'Yes', and only in that event, then answer Special Issue No. 6.

SPECIAL ISSUE NO. 6

Was the failure of the Certificate of Deposit No. 291 to provide that the survivor or survivors of Maida Cooper or Minnie Durham or Nell Durham would be entitled to the funds represented by said Certificate of Deposit No. 291 the result of a mutual mistake on the part of Maida Cooper and the First National Bank of Poth, acting through Mildred Moore?

ANSWER: Yes

SPECIAL ISSUE NO. 7

Do you find that the First National Bank of Poth and Maida Cooper, the deceased, made a complete contract in writing to pay the proceeds of the checking account in evidence to Minnie and Nell Durham after Maida Cooper's death?

ANSWER: No "

Appellants contend the trial court erred in granting judgment ordering the Certificate of Deposit to be reformed to provide rights of survivorship as a result of the jury's answer to Special Issue No. 6 that a mutual mistake occurred between Mrs. Moore and the deceased as to the certificate reflecting rights of survivorship because there is no evidence to support the jury's answer to said Issue No. 6. We agree.

To show that a mutual mistake occurred between Mrs. Moore and the deceased as to the Certificate of Deposit reflecting rights of survivorship, appellees rely on "portions" of Mrs. Moore's "ex parte statement" read into evidence by Gary Shank, attorney for Minnie Durham.

Appellants argue Mrs. Moore's statement is inadmissible hearsay evidence. Appellees argue the statement is admissible as a declaration against the interest of the First National Bank of Poth, therefore, an exception to the hearsay rule.

As the Texas Supreme Court recognized in *Duncan v. Smith*, 393 S.W.2d 798 (Tex. 1965), the essential elements of a declaration against interest are as follows:

" ' . . . Declarations of a person since deceased, opposed to his pecuniary or proprietary interest, are admissible in evidence, provided he was in a position to know of the matters stated and had no probable motive to misrepresent the

facts.' 2 McCormick and Ray, § 1001 . . . "

■ We have carefully examined Mrs. Moore's statement and find it does not disclose facts adverse to the Bank's proprietary or pecuniary interest. The statement merely reflects the transaction which occurred between Mrs. Moore and Maida Cooper, the deceased. Therefore, we hold Mrs. Moore's statement is hearsay and is no evidence of probative force that a mutual mistake of fact occurred between the deceased and First National Bank of Poth, acting through Mrs. Moore. There being no evidence of mutual mistake, the Certificate of Deposit was improperly reformed to provide rights of survivorship.

In *Johnson v. Snell*, 504 S.W.2d 397 (Tex. 1973), the court said:

"The contention is further made, and the court of civil appeals so held, that the contract was unenforceable because there was no meeting of the minds of the parties to the contract. Although respondent testified that she understood the contract to mean that she was to receive 6% interest on the balance due of $45,-000.00, *there is absolutely no evidence in the present record that the petitioner shared such view. A mistake by only one party to an agreement, not known to or induced by acts of the other party will not constitute grounds for relief. Morris v. Millers Mutual Fire Insurance Co. of Texas*, 343 S.W.2d 269 (Tex.Civ.App. 1961); *Wheeler v. Holloway*, 276 S.W. 653 (Tex.Comm'n App.1925). There are no pleadings or evidence of fraud which might vitiate the contract. The respondent's claim of mutual mistake cannot be sustained. The record does not support respondent's claim that the contract was the result of mutual mistake." (Emphasis added)

Justice Walker in a concurring opinion said:

" . . . As pointed out in *Warren v. Osborne*, Tex.Civ.App., 154 S.W.2d 944 (wr. ref. w. m.), knowledge of one party of the other's mistake regarding the expression of the contract is equivalent to mutual mistake. See also *Automobile Ins. Co. v. United Elec. Serv. Co.*, Tex. Civ.App., 275 S.W.2d 833 (wr. ref. n. r. e.); 3 Pomeroy, Equity Jurisprudence, 5th ed. 1941, § 870a; 13 Williston on Contracts, 3rd ed. 1970, §§ 1548, 1557; Restatement, Contracts, §§ 71, 505 . . . "

In *Sun Oil Co. v. Bennett*, 125 Tex. 540, 84 S.W.2d 447 (1935), the court said:

" . . . What the parties mutually intended and agreed is not the vital inquiry. The party seeking reformation must of course prove what the true agreement was, but his case is not made by proof that there was an agreement which is at variance with the writing. He must go further and establish the fact that the terms or provisions of the writing which differ from the true agreement made were placed in the instrument by mutual mistake . . . "

■ Appellees also rely on testimony elicited from Charles L. Uhlig, executive vice-president and cashier of the First National Bank of Poth, to show that a mutual mistake occurred between the deceased and Mrs. Moore. In response to a hypothetical question, as to how a Certificate of Deposit is set up if it were to be payable to one person or another and the funds were to go to whomever survived, Uhlig testified the word "or" would be used on the instrument.

The Certificate of Deposit in this case was made payable to "Maida Cooper or Minnie or Nell Durham". However, an examination of the record shows Uhlig was not present during the course of the transaction which occurred between the deceased and Mrs. Moore. In fact, Uhlig's only contact with the deceased, on the day in question, was in directing her to Mrs. Moore's desk. The deceased did not discuss with Uhlig the business she desired to transact that day. Therefore, Uhlig's testimony is no evidence of probative force that a mutual mistake occurred between the deceased and Mrs. Moore as to the certificate reflecting survivorship rights.

Furthermore, the Texas Supreme Court has held that unless the contractual arrangement contains some reference to an intent that the survivor would have rights in the certificate, the use of the word "or", in setting up the certificate, is not sufficient to establish survivorship rights. *Forehand v. Light*, 452 S.W.2d 709 (Tex.1970).

Appellees urge that Mrs. Moore's statement is sufficient evidence establishing a third party beneficiary contract between the bank and the deceased. Appellees argue they have acquired a survivorship interest in the Certificate of Deposit and the funds in the checking account as beneficiaries under that contract. Having found Mrs. Moore's statement inadmissible, we hold there is no evidence of probative force establishing a third party beneficiary contract.

■ Appellants also contend the trial court erred in awarding the funds on deposit in the checking account and the Certificate of Deposit to appellees because there is no evidence to support the jury's finding the funds were a gift causa mortis. We agree.

In submitting Special Issue No. 1, the court instructed the jury that before a finding of a gift causa mortis could be made, it must find the following elements existed:

"1. That the donor had a present apprehension of impending death at the time;

2. That the donor intended to make an immediate gift of the property in question, subject to the right to revoke the gift if the donor should survive;

3. That the donor made delivery of the property in question to the donee or donees, wholly divesting donor of the possession and control thereof, subject to the right to revoke the gift if donor survived.

Delivery may be actual or constructive. A constructive delivery is such action on the part of the donor that shows the donor's intent to make the property in question immediately available to the donee, subject to the right to revoke.

Whether there has been a delivery may be determined from all the facts and circumstances admitted in evidence.

4. That the donee or donees accepted the gift. There exists in law a presumption that a donee has not refused a gift of valuable property.

5. That the donor died as a result of the circumstance or condition that caused her apprehension of death at the time of the gift.

You are further instructed that the word 'revoke' means to annul or make void by recalling or taking back; to cancel, rescind and/or repeal."

This court in *Glover v. Moore*, 544 S.W.2d 777 (Tex.Civ.App.—Eastland 1976, no writ) applied the law as stated in *State v. Abernathy*, 431 S.W.2d 359 (Tex.Civ.App.—Amarillo 1968, writ ref. n. r. e.):

" '. . . Our courts have uniformly held that in order to constitute a valid gift inter vivos or causa mortis, there must be a delivery of possession of the thing given; and the intention of the donor to vest in the donee unconditionally and immediately the ownership of the property delivered. *Weems v. First National Bank of Winnsboro* (Tex.Civ.App.) 234 S.W. 931; *Wells v. Sansing*, 151 Tex. 36, 245 S.W.2d 964; *O'Donnell v. Halladay* (Tex.Civ.App.) 152 S.W.2d 847 (ref'd w. o. m.); 27 Tex.Jur.2d, p. 158, Gifts, Sec. 12.' "

Appellees rely on a long line of established case law in this state allowing subsequent declarations of the donor to raise a fact issue of whether there had been a delivery of the chattel in question to the donee. *Lord v. New York Life Insurance Co.*, 95 Tex. 216, 66 S.W. 290 (1902); *Schauer v. Von Schauer*, 138 S.W. 145 (Tex.Civ.App.—Austin 1911, writ ref'd); *Brown v. Fore*, 12 S.W.2d 114 (Tex.Comm'n App. 1929, holding approved); *Bishop v. Bishop*, 359 S.W.2d 869 (Tex.1962). See also, *McDaniel v. Adams*, 531 S.W.2d 901 (Tex.Civ.App.—Houston (1st Dist.) 1975, writ ref'd n. r. e.). An examination of these cases illustrate the subsequent statements

of the donor of the alleged act of delivery are in no way similar to the subsequent statements made by the deceased in the case at bar.

We have carefully examined the record and find the only statements made by the deceased "subsequent" to the alleged act of delivery, were made to Ms. O. C. Hosek, a close friend, who testified the deceased told her, " . . . this is one thing that's off my mind. I have this taken care of. Everything is like I want it . . . " We hold this is no evidence of probative force that the deceased had "delivered" the funds in question, either actually or constructively, to the donees.

Furthermore, we hold the making of the Certificate of Deposit payable to "Maida Cooper or Minnie or Nell Durham", and the "printed" names "or Minnie or Nell Durham" added on the bank's ledger sheet indicating the deceased's account, is no evidence of probative force that the deceased intended to divest herself of control and possession of the funds in question.

Finally, appellants argue the trial court erred in granting judgment awarding the player piano to Nell Durham because there was no evidence to support the jury finding an inter vivos gift was made. We agree.

■ As stated in *State v. Abernathy*, supra, to constitute a valid inter vivos gift, the donor must intend to vest in the donee "immediately" the ownership of the property "delivered". The record fails to show the deceased intended to make an immediate gift of the piano to Nell Durham.

When asked what the deceased intended to do with the piano, Ms. O. C. Hosek testified deceased had told her, "I'm going to enjoy it as long as I can and then it's *going to be* Nell's piano . . . " (emphasis added) On cross-examination, Ms. Hosek continued to testify as follows:

"Q So based on what you have stated, it appears that she said that's going to be Nell's piano?

A Right.

Q And thereafter she said Nell's piano?

A Right.

Q But it stayed in her house, didn't it?

A Yes, it stayed there. She was going to play it a while.

Q All right. When was it supposed to be Nell's piano?

A When she got tired of it. When she got through with it."

■ It is clear from this testimony the deceased did not intend for the gift to take effect immediately. Instead, the gift was to be effective at some later point in time when deceased "got tired of it" or "through with it". We find no evidence to support the finding that Maida Cooper made a gift during her lifetime of the player piano to Nell Durham. A gift cannot be made to take effect in the future since a mere promise to give is unenforceable without consideration. *Fleck v. Baldwin*, 141 Tex. 340, 172 S.W.2d 975 (1943).

The judgment of the trial court is reversed and rendered that the funds on deposit in the checking account, the Certificate of Deposit and the player piano be placed in the possession and control of A. C. Cooper, Jr., administrator of the estate of Maida Cooper, deceased, for proper distribution.