Adela E. GONZALES and Adolph Gonzales, Appellants,

v.

Frank C. ZERDA, Appellee.

No. 04–89–00412–CV.

Court of Appeals of Texas, San Antonio.

Nov. 30, 1990.

Rehearing Denied Feb. 6, 1991.

Kenneth Beanland, Carl Raymond Crites, San Antonio, for appellants.

Morris L. Collins, Michael J. Collins, Collins, Collins & Collins, San Antonio, for appellee.

Before CADENA, C.J., and REEVES and CARR, JJ.

OPINION

REEVES, Justice.

Appellants' motion for rehearing is granted. Our opinion and judgment delivered August 22, 1990 is withdrawn. This opinion and judgment is hereby substituted.

Frank Zerda sued Adela Gonzales and her husband Adolph in conversion, contending that they were wrongfully holding funds transferred to them by a gift *causa mortis*. The trial court found in favor of the plaintiff and awarded him the balance of certain bank accounts. Defendants bring five points of error—but one is dispositive of this appeal. They assert there is no evidence to support the answer to question number one that a gift made by plaintiff to defendant, Adela Gonzales and

his sister Leocadia was in contemplation of death (gift *causa mortis*).

Plaintiff was eighty years old at the time of trial in April 1989. He was retired and had never been married. All his adult life he had lived with and supported his sister Leocadia. Plaintiff brought defendant Adela Gonzales into his home when she was six years old and had raised her as if she were his own daughter.

In December 1986 plaintiff had a certificate of deposit worth more than sixty-seven thousand dollars in the Bank of Floresville. On December 29, 1986, plaintiff met with a vice president of the bank, Frances Giona. He told her he wanted his name taken off the certificate of deposit, thereby transferring it to Adela. Adela and plaintiff's sister Leocadia were already listed on the certificate as co-holders, with rights of survivorship. Plaintiff signed a relinquishment form which removed his right to the money represented by the certificate of deposit.

The following year Adela decided to withdraw the money. The original certificate of deposit was lost. Adela could not withdraw the money, until plaintiff signed a "lost certificate affidavit." Plaintiff accompanied Adela to the Bank of Floresville on August 25, 1987, and signed the affidavit, allowing Adela to withdraw the money, which she placed in bank accounts in San Antonio.

The following summer plaintiff demanded the return of the balance of the remaining money. Adela refused. This suit followed. Plaintiff claims he made a gift *causa mortis* to Adela, revocable upon his survival. The jury agreed.

The law on gift *causa mortis* in this jurisdiction is sparse. Under this point of error both parties rely exclusively on *Thompson v. Thompson*, 12 Tex. 164, 165 (Tex.1854), which defines such a gift as follows:

> To hold the gift as one *causa mortis*, it must be shown to have been in contemplation of death from present illness or

anticipated peril. The circumstances must be such as to show that the donor intended the gift to take effect if he should die shortly afterwards, but if he should recover, that the property should be restored to him.

Defendants argue plaintiff's proof failed to establish that he made a gift *causa mortis* in two respects. He failed to prove that the gift to Adela was made in contemplation of death from present illness, and that at the time of making the gift he intended it to be one *causa mortis*. We agree.

In reviewing a no evidence point of error, we consider only the evidence and reasonable inferences from the evidence which viewed in the most favorable light supports the jury's finding, and reject all evidence to the contrary. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981). The evidence supporting plaintiff's claim that he made a gift to Adela in contemplation of death from present illness or peril is as follows:

Frances Giona, the vice president of the Bank of Floresville, testified that when plaintiff talked to her on December 29, 1986, he said he was going into the hospital and wanted his name taken off the certificate of deposit. Plaintiff testified, more than two years later, that his medical problems at the time of trial, including "back problems," "prostate problems," "anemia," "fainting spells," and "pain around in the chest around the heart area." In August of 1986 he "was feeling pretty sick," and thought he might die if he went into the hospital.[1]

The testimony that plaintiff felt sick at the time of making the gift, and was afraid of dying if he entered a hospital (which he had no plans to do), was not evidence that he contemplated death from a particular present illness or peril. Gift *causa mortis* requires a more specific apprehension. Referring to the phrase "in contemplation of death," the United States Supreme Court

---

1. However, plaintiff was not hospitalized in either 1986 or 1987. He also testified that at the time he signed the lost certificate affidavit allowing Adela to withdraw the money he felt as well as he ever has.

has said, "It is recognized that the reference is not to the general expectation of death which all entertain. It must be a particular concern, giving rise to a definite motive." *United States v. Wells*, 283 U.S. 102, 115, 51 S.Ct. 446, 451, 75 L.Ed. 867 (1931). We also find persuasive the Supreme Court of Tennessee's statement that the gift "must be made in the conceived approach of death; not a general apprehension of death from the mortality of man, but an apprehension arising from the peculiar sickness, peril, or danger." *Dietzen v. American Trust & Banking Co.*, 175 Tenn. 49, 131 S.W.2d 69, 71 (1939).

Plaintiff offered no evidence that at the time he transferred the money to Adela he contemplated death from any particular illness. His testimony that he was sick at the time did not support a gift *causa mortis*.

> From portions of the evidence it may be inferred that the plaintiff was in sickness at the time of making the deed; but this cannot affect the irrevocable character of the gift, unless sickness can be shown to be so imminently dangerous as to justify the belief that it will be fatal in its termination.

*Thompson, supra.* Appellant offered no such evidence. He therefore failed to establish that he had made a revocable gift *causa mortis*. The jury's finding to the contrary is unsupported by evidence.

We also agree with defendants' contention that plaintiff failed to prove his intent to make a gift *causa mortis*. Plaintiff testified that he told Adela when she withdrew the money from the Bank of Floresville to "keep that money all together."

To establish gift *causa mortis*, plaintiff was required to prove he intended to make a gift to take effect if he died, but that should be returned to him if he lived. *Thompson, supra.* The intention to make a gift *causa mortis* need not be express, but it must be clearly manifested. 38 C.J.S. 900, *Gifts*, § 77. The intention that the gift be potentially revocable must be manifested at the time of making the gift. Plaintiff offered no evidence that he informed Adela at the time of transferring the certificate of deposit that the money should be returned if he survived. Without such testimony the evidence does not establish a gift *causa mortis*.

There was no evidence to support the jury's finding that plaintiff had made a revocable gift *causa mortis*.

Plaintiff did receive a favorable answer to a question that defendants had converted the funds and it was upon this theory that the trial court awarded the funds traced from the gift *causa mortis*. There was no dispute that there was a gift. The plaintiff acknowledges this fact in his pleadings and his brief, however, he specifically alleges and maintains that it was intended to be revocable. It was his intention that the money be returned to him if he survived. His insistence that defendant was guilty of conversion of the money was based solely on the theory that he had not died and had exercised the right to revoke the gift. Plaintiff's claim of conversion was based upon the defendant's refusal to return the money to him following his demand for its return.

In the court's charge to the jury it defined the term "gift in contemplation of death." The instruction leaves no doubt that the jury was told that a gift in contemplation of death required a gift which was made with the intention by the donor that if he did not die the money would be returned to the donor. Therefore, a gift in contemplation of death necessarily includes, particularly in view of the trial court's instruction, a finding of a gift; a gift in contemplation of death presupposes the existence of a gift intervivos.

Plaintiff chose to rest his claim for the money solely on the existence of a gift *causa mortis*. Since there is no evidence of a gift in contemplation of death, plaintiff failed to produce any evidence supporting his right to recover.

The judgment of the trial court is reversed and judgment is rendered in favor of the defendant.