Debora Kay Ridgeway DORMAN, Pamela Ridgeway Hightower, and Susan Ridgeway Waters, Appellants,

v.

Betty J. ARNOLD, Appellee.

No. 06–96–00014–CV.

Court of Appeals of Texas, Texarkana.

Argued Sept. 5, 1996.

Decided Sept. 17, 1996.

Ronald Ned Dennis, Marshall, for Appellants.

Edwin E. Buckner, Jr., Max A. Sandlin, Jr., Sandlin & Buckner, Marshall, for Appellee.

Before CORNELIUS, C.J., and GRANT and STARR, JJ.

## OPINION

STARR, Justice.

This is an *inter vivos* gift case tried nonjury. Appellants, three daughters of Harmon Ridgeway, appeal from a declaratory judgment confirming ownership in appellee of certain personal property claimed to have been given to appellee, Betty Arnold.

Harmon Ridgeway died on May 23, 1990, intestate. His three daughters, Debora, Pamela, and Susan are his sole survivors, and are appellants in this case. Betty Arnold, appellee, is his sister. Ridgeway had a decades-long history of mental illness and was institutionalized for a period of time for that reason. He began receiving Social Security benefit checks in the mid–1960's. His father acted as representative payee for the bene-

fits. After the father's death, Betty Arnold succeeded as Social Security representative and managed Ridgeway's benefits from 1984 until his death.

Ridgeway was placed in a nursing home in January 1990 and remained there until his death. In January, his savings account was changed and placed in a new account in Betty Arnold's name. She used funds from that account to pay for Ridgeway's care, medical expenses, and eventually his funeral expenses.

The daughters sought to recover the remainder of the savings account and learned that the funds were in Arnold's name. The daughters then filed a proceeding to determine heirship, and during its pendency Arnold filed a suit for declaratory judgment (on January 18, 1992) asserting that Ridgeway had made a gift of the accounts to her while he was hospitalized in January 1990, and of a mobile home at an earlier date. In the answer to her action, the daughters neither pleaded affirmative defenses nor did they plead any cross-claims against Arnold. No action to administer the estate was ever commenced.

The daughters filed a cross-action on March 8, 1994, alleging conversion by Arnold and seeking an accounting.

The trial court rendered judgment declaring that the funds belonged to Arnold and rendered a take-nothing judgment against the daughters on their cross-action. Findings of fact and conclusions of law were filed.

█ The daughters contend that the evidence is both legally and factually insufficient to support the trial court's findings and judgment determining that *inter vivos* gifts occurred. In attacking the verdict, appellants necessarily attack the findings of fact and conclusions of law of the trial court. Findings of fact have the same force and dignity as a jury verdict and are reviewed for factual and legal sufficiency using the same standards applied to jury verdicts. *Zieben v. Platt,* 786 S.W.2d 797, 799 (Tex.App.—Houston [14th Dist.] 1990, no writ).

█ In our review of the legal and factual sufficiency of the evidence, we determine the legal sufficiency of the evidence under the review standards of *Larson v. Cook Consultants, Inc.,* 690 S.W.2d 567 (Tex.1985), and the factual sufficiency under the review standards of *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). Thus, we will first examine the record for any probative evidence to support the finding, ignoring all contrary evidence. If there is any evidence of probative value which supports the finding, then the point of error fails. *Holley v. Watts,* 629 S.W.2d 694 (Tex.1982). If we find some probative evidence, we will test the factual sufficiency of that evidence by examining the entire record to determine whether the finding is clearly wrong and unjust.

█ Three elements are necessary to establish the existence of a gift: (1) intent to make a gift; (2) delivery of the property; and (3) acceptance of the property. *In re Estate of Hamill,* 866 S.W.2d 339, 344 (Tex. App.—Amarillo 1993, no writ); *Grimsley v. Grimsley,* 632 S.W.2d 174, 177 (Tex.App.— Corpus Christi 1982, no writ). The intent of the donor, however, is the principal issue in determining whether a gift has been made. *Thompson v. Lawson,* 793 S.W.2d 94, 96 (Tex.App.—Eastland 1990, writ denied). The person claiming that a gift was made must prove the gift by clear and convincing evidence. *Oadra v. Stegall,* 871 S.W.2d 882, 892 (Tex.App.—Houston [14th Dist.] 1994, no writ).

We will first consider the question of whether the evidence is legally sufficient to establish a valid *inter vivos* gift. Viewing the evidence most favorably to the trial court's express and implied findings, we are directed to the testimony of three witnesses: Elsie Alldredge, Betty Arnold, and Kelly T. Arnold, Jr.

█ Elsie Alldredge was an employee of Bank One, now retired. She knew Betty Arnold and her brother, Harmon Ridgeway, as customers of the bank. She was familiar with Mr. Ridgeway's CD. It was originally styled Harmon Ridgeway by personal representative payee Betty J. Arnold. She testified about the day that Betty Arnold came in and told her that her brother was sick and was going to have to go to the nursing home. Betty told Alldredge that Harmon wanted

his name removed from the CD and a savings account. Alldredge changed the Social Security numbers and names on the CD and savings account to that of Betty Arnold. From that time forward, statements on the accounts were mailed to Betty. Interest was reported to the IRS on Betty's Social Security number. The bank's records show that withdrawals were made thereafter.

The only testimony in the record favorable to appellee on the question of present donative intent is from the testimony of Betty Arnold and her husband, Kelly T. Arnold, Jr. Betty's testimony is as follows:

Q On January 29, 1990, did you have an occasion to visit with Harmon about his bank accounts at Bank One?

A Yes, sir.

. . . .

Q ... What did he tell you about his bank accounts?

A Well, he said his health was getting worse and that I had been real good to him and I had taken real good care of him and he wanted me to have his money *if something happened to him.*

Q And did he tell you to change the ownership of the accounts?

A Yes, sir.

Q And that was both the CD and the savings account?

A Yes, sir.

. . . .

Q ... Under your agreement with Harmon Ridgeway, were you to pay his expenses out of these bank accounts at Bank One?

A Yes, sir.

Q So this wasn't just an outright here's some money?

A No, sir.

Q *And if there was any left when he passed away it was to go to you?*

A Right.

(Emphasis added). The testimony of Mr. Kelly T. Arnold, Jr. (much discussed in the briefs and arguments as Dead Man's Statute "corroboration") is as follows:

Q And what did you hear Harmon say that he wanted to happen to his CD and savings account at Bank One?

A He just said—he just—he just told—he's a good man. He told my wife that he thought it was about time for him to go ahead and put it in her name where she wouldn't have any problems with it.

Q You heard him say that?

A Yes, sir.

We are of the opinion that the evidence in the record is legally insufficient to prove a present donative intent necessary to complete a valid *inter vivos* gift. To the contrary, the evidence establishes conclusively that Harmon Ridgeway intended for the property to remain his until his death. Ownership was clearly retained. We hold that, as a matter of law, present donative intent was not shown. *Akin v. Akin,* 649 S.W.2d 700 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.), stating:

He who attempts to establish title to property through a gift inter vivos, as against the estate of a decedent, takes upon himself a heavy burden, which he must support by evidence of clear and probative force, which clearly establishes every element of a valid gift. [Quoting *Stewart v. Tolar & Daniel,* 250 S.W. 274 (Tex.Civ. App.—Beaumont 1923, no writ) ].

▪ Under the law of Texas, gifts may be made "causa mortis." *Thompson v. Thompson,* 12 Tex. 327, 329–30 (1854). However, to hold that a gift is one "causa mortis" it must be shown to have been in contemplation of death from present illness or anticipated peril. The circumstances must be such as to show that the donor intended the gift to take effect when made, but if the donor should recover the property would be restored to him. In short, it must be intended as a gift "causa mortis." *Gonzales v. Zerda,* 802 S.W.2d 794 (Tex.App.—San Antonio 1990, writ denied). Further, a gift causa mortis also requires a present donative intent. *O'Donnell v. Halladay,* 152 S.W.2d 847 (Tex. Civ.App.—El Paso 1941, writ ref'd w.o.m.).

In the *O'Donnell* case, *supra,* it was claimed that savings account pass books were given by Derr to O'Donnell. Derr tried to

write a will which was invalid. The court held that the savings accounts were not gifts *inter vivos*, the Chief Justice quoting Kent's Commentaries with approval, as follows:

> Gifts inter vivos have no reference to the future, and go into immediate and absolute effect.

*Chevallier v. Wilson,* 1 Tex. 161 (1846). The court further ruled out gifts causa mortis, stating:

> Under the testimony there is no evidence of ... intention on the part of Derr ... to give the deposit to O'Donnell. The purported ineffective will is no evidence of such intention. In fact, it negatives such an intention. A will evidences an intention to make a gift in the future.... The essence of a gift is an executed intention of the transfer of title. A will is without legal efficacy up to the moment of death. A gift causa mortis, revokable though it may be, operates in praesenti. If the deposit in question at the time and upon the death of Derr was not the property of O'Donnell he must fail herein.

■ In our opinion the undisputed testimony evidences a testamentary intent.[1] This means the property was owned by Harmon Ridgeway at the time of his death, subject to a valid written will or the law of descent and distribution. There was not a valid present gift. *Harmon v. Schmitz,* 39 S.W.2d 587 (Tex. Comm'n App.1931, judgm't adopted); *Cooper v. Durham,* 565 S.W.2d 308 (Tex.Civ. App.—Eastland 1978, writ ref'd n.r.e.); *Glover v. Moore,* 544 S.W.2d 777 (Tex.Civ.App.— Eastland 1976, no writ); *State v. Abernathy,* 431 S.W.2d 359 (Tex.Civ.App.—Amarillo 1968, writ ref'd n.r.e.); *Cogdill v. First Nat'l Bank of Quitaque,* 193 S.W.2d 701 (Tex.Civ. App.—Amarillo 1946, no writ). Accordingly, we hold appellants' points 1, 6, and 7 to be well taken and reverse and render judgment for appellants. We hold that title to the personal property in issue rests in the estate of the decedent.

■ The award of attorney's fees under the Uniform Declaratory Judgments Act is governed by TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986). The court may award reasonable and necessary attorney's fees "as are equitable and just." *Id.* The award of attorney's fees is subject to review under an abuse of discretion standard. *Contact Prods., Inc. v. Dixico, Inc.,* 672 S.W.2d 607 (Tex.App.—Dallas 1984, no writ). It is not essential that a party prevail in order to receive attorney's fees. *Maris v. McCraw,* 902 S.W.2d 191 (Tex.App.—Eastland 1995, writ denied). However, where attorney's fees are contingent on success, the award should be read to implicitly require success. *Spiller v. Spiller,* 901 S.W.2d 553 (Tex.App.—San Antonio 1995, writ denied). It is our opinion that the judgment in this case awards attorney's fees on a rationale involving success as a prevailing party and necessarily contemplating that "the facts and the law are with plaintiff." Consequently, we hold that the award of attorney's fees to appellee resulted from an error of law by the trial court. We reverse the award of attorney's fees as being clearly wrong and unjust. The trial court's award of attorney's fees to appellee was an abuse of discretion.

Appellants have, in their counterclaim, sought remedy for conversion. Appellee pleaded limitations. The pleading and proof sustain the trial court's finding of fact and conclusions of law which sustain the trial court's judgment. Appellants have cited no cases or authorities in support of their position. Consequently, appellants' points 15, 16, and 17 are overruled.

The judgment of the trial court is reversed and rendered. Appellee is denied declaratory relief, and ownership of the accounts in question is vested in the estate of the decedent, Harmon Ridgeway.

GRANT, Justice, concurring.

In addition to the point discussed in the majority opinion, I would add that there is no evidence in this case of any type of delivery.

---

1. Although it was not a part of the testimony under review on the legal insufficiency point, a similar testamentary intent is reflected in appellee's summary judgment record as to the mobile home. Betty Arnold's deposition recites: "Well, he just lived there with us and he gave me the key and the title. And he said that being as we let him move it on there and wasn't charging him any rent or anything, at the time of his death, you know, that he wanted us to have it." The trial court's judgment does not mention the mobile home.

A gift requires more than a promise; it requires both intent to make a gift and execution by delivery or other transfer of the property. *Thornton v. Rains,* 157 Tex. 65, 299 S.W.2d 287, 288 (1957).

The delivery of a gift may be either actual or constructive. *Bishop v. Bishop,* 359 S.W.2d 869, 871 (Tex.1962). However, a review of numerous Texas cases on this subject reveals that both types of delivery require some positive act on the part of the giver.[2]

Arnold takes the position that Ridgeway was of sound mind and capable of forming a donative intent. Yet, there is no evidence that he did anything to transfer the funds to her, such as making a telephone call to the bank to instruct the transfer, signing a document instructing the bank to make the transfer, going to the bank and asking it to make the transfer, or any other type of delivery. There is simply no evidence of delivery in this case.

Furthermore, as a designated payee, Arnold had a fiduciary relationship to Harmon Ridgeway and was bound by the general duties of a trustee when dealing with Ridgeway's property. *See, e.g., Slay v. Burnett Trust,* 143 Tex. 621, 187 S.W.2d 377, 387 (1945). Under Section 113.053(a)(1) of the Texas Trust Code, "a trustee shall not directly or indirectly buy or sell trust property from or to" herself, unless an enumerated exception applies. TEX. PROP.CODE ANN. § 113.053(a)(1) (Vernon 1995). None of the enumerated exceptions apply in this case. *See* TEX. PROP.CODE ANN. § 113.053(b)-(f) (Vernon 1995). If a sale from a trustee to herself is prohibited as self-dealing, then a gift of trust property from a trustee to herself would be an even more flagrant type of prohibited self-dealing.

I concur in the majority opinion for the reasons stated therein, as well as the reasons set forth in this concurring opinion.

---

**2.** *See, e.g., Williams v. Krueger,* 351 S.W.2d 932, 934 (Tex.Civ.App.—Waco 1961), *rev'd on other grounds,* 163 Tex. 545, 359 S.W.2d 48 (1962); *Pruett v. First Nat'l Bank of Temple,* 175 S.W.2d 658, 663 (Tex.Civ.App.—Austin 1943, no writ);

*O'Donnell v. Halladay,* 152 S.W.2d 847, 851 (Tex.Civ.App.—El Paso 1941, writ ref'd w.o.m.); *Benavides v. Laredo Nat'l Bank,* 91 S.W.2d 372, 374 (Tex.Civ.App.—Eastland 1936, no writ).